## Dotson v. Dotson, et al.

(Decided February 24, 1922.)

## Appeal from Pike Circuit Court.

1. Cancellation of Instruments—Deeds—Consideration.—Where the recited consideration in a deed of conveyance fails, and it is stipulated therein that upon its failure the land is to revert to the grantor, a condition subsequent exists which will be enforced by a cancellation of the deed.

2. Deeds—Consideration.—Slight evidence tending to show that the consideration for a deed was the dismissal of a suit for damages is not sufficient to avoid the performance of the recited consideration in the deed itself.

3. Deeds—Promise to Convey — Consideration.— The fact that the promisee acquired a small interest in a tract of land in which the promisor agreed to convey her interest, does not satisfy the promise, inasmuch as the interest was acquired at a judicial sale and title thereto in no wise depends upon or relates to the agreement to convey.

STRATTON & STEPHENSON for appellant.

ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

This is an appeal from a judgment of the Pike circuit court, dismissing the petition of appellant, who claims to be the owner of an undivided one-fifth interest in a tract of land known as the John Dotson farm. The claim of title is based on a deed to appellant from two of the ten heirs of John Dotson. This deed undoubtedly conveyed to appellant the interest of the two heirs in the land in controversy.

Anticipating the defense of appellees, appellant averred that on August 13, 1906, he conveyed to Sarah Dotson, the mother of appellees, an undivided one-fifth interest in the Dotson farm in consideration of a promise on her part to convey to him her interest in what is referred to in the record sometimes as the "Micheal Charles farm" and at others as the "Rachel Carter farm" or the "Charles and Carter farm," situated a short distance from the John Dotson farm. He alleged that Sarah Dotson had failed to comply with her promise to convey her interest in the Micheal Charles farm; that the John Dotson farm was occupied by the heirs of Sarah Dotson, all of whom were made defendants; that

he was the owner of an undivided one-fifth interest therein; that the land was susceptible of partition and division without materially impairing its value or the value of any part thereof; and he asked that it be partitioned and divided and that his part be allotted to him.

In addition to denying the allegations of the petition the appellees asserted title by adverse possession, and in another paragraph pleaded that the deed from appellant to Sarah Dotson was executed in consideration of the dismissal of a suit for damages which Sarah Dotson then had against appellant. They asked that their title to the John Dotson land be quieted.

In an amended petition appellant sought to have his deed to Sarah Dotson set aside on the ground of failure of consideration. By appropriate pleadings the issues were completed and on the hearing the petition of appellant was dismissed.

The evidence is confusing, much of it is incompetent though admitted without objection, and the facts are difficult of ascertainment. It does appear, however, that on February 2, 1892, Rebecca Dotson and Elexious Coleman, daughters of John Dotson, with their husbands, conveyed to appellant their undivided interests in the John Dotson farm; that on August 13, 1906, appellant conveyed the same to Sarah Dotson, the wife of John Dotson and mother of appellees. John Dotson had ten children, and the interests of the two daughters amounted to a one-fifth interest in the land. It also appears that the Micheal Charles land referred to belonged to Micheal Charles, the father of Sarah Dotson, and there were seven of his children; that one of them, Rachel Dotson, married H. S. Carter and died childless, and the remaining six owned a six-seventh interest in the farm with the remainder interest in the one-seventh of the wife of H. S. Carter.

It is shown that prior to the conveyance from appellant to Sarah Dotson, he and H. S. Carter were jointly engaged in floating logs down Peter creek, which ran through the John Dotson farm, and at that time dammed the water and caused it to be diverted and do some damage to the Dotson farm. A suit was filed by Sarah Dotson to recover a judgment of $100.00 for this alleged damage. The suit was subsequently dismissed. Appellees claim that the consideration for dismissing the suit was a promise on the part of appellant to convey to Sarah Dotson his undivided interest in the John Dotson

farm and the conveyance was made in fulfillment of that promise. The testimony on this point, however, is very unsatisfactory.

For appellant it is contended that the consideration for the deed of August 13, 1906, was as stated therein, and in this respect he is corroborated by the competent testimony of George Dotson, a son of Sarah Dotson. His own testimony with reference to conversations with Sarah Dotson, now deceased, being admitted without objection, was incompetent, but there is other competent evidence in the record corroborating his theory of the case.

The applicable part of the deed provides:

"This above undivided interest was swapped to Sarah Dotsons undivided interest in the land of Rachel Carter deceased and *Nickel* Charles & Dave Charles and Betty Charles and Sarah Dotson having made a deed to Geo. W. Dotson for her undivided interest June 14th, 1904, recorded in deed book No. 36, page 90.

"And it is agreed and understood that if the said Geo. W. Dotson fails to hold the said undivided interest of Sarah Dotson in the Rachel Carter and Charles estate as above mentioned. The said undivided interest in the John Dotson deceased estate falls back to Geo. W. Dotson if Sarah Dotson deed to Geo. W. Dotson is good, she is to have it her lifetime and after her death said land falls to Lias Dotson, her son."

While inartfully expressed there can be no doubt of the meaning of the language quoted so far as it pertains to the legal question involved. Sarah Dotson never executed a deed to appellant for her undivided interest in the Micheal Charles or Rachel Carter land, but it is shown in the evidence that only a few days before the execution of the deed of August 13, 1906, she had conveyed her interest in the Charles land to H. S. Carter for a consideration of $5.00, which was not paid, and when she accepted the deed of August 13, 1906, she stated that the deed to Carter was without consideration and that it was her purpose to have it set aside and to convey her interest in that land to appellant. While the deed of August 13, 1906, assumes that she had executed a deed to Geo. W. Dotson for her interest in the Charles or Carter land it is clearly shown that no such deed was executed and it must be assumed that it was agreed, as the evidence conduces to show, that she would execute such a deed so

soon as she could reinvest herself with title. It is immaterial whether she agreed to convey her interest in the land of her grandfather or merely to convey her remainder interest in the one-seventh part of it inherited from her sister, Rachel, as in neither case was the conveyance made.

There was proof showing that the appellees thereafter cultivated the John Dotson farm, sold timber from it and the mineral rights in it, made a parol division of it among themselves, and exercised such acts of ownership in connection with it as the owners ordinarily exercise. But their claim of title by adverse possession can not be allowed because the necessary period has not elapsed since the statute began to run. It is not denied that until August 13, 1906, they did not claim title to any part of the interests belonging to the two sisters under whom appellant is claiming title; in fact their claim of title to the interests of these two children is based on the deed of August 13, 1906.

There is evidence of a recognition on the part of Sarah Dotson of her obligation to convey her interest as alleged by appellant. This evidence relates to a sale of the minerals in the Dotson farm, the agreement with respect to which was executed by appellant in 1910, under an implied promise that Sarah Dotson would carry out her agreement to convey her interest in the Micheal Charles land.

Appellees call attention to the fact that appellant now owns a tract of land acquired from H. S. Carter, which includes about ten acres of the Micheal Charles land. While there is an intimation that the relinquishing of Sarah Dotson's interest in that small part of the Micheal Charles land was the consideration for the deed of August 13, 1906, it is not directly or inferentially supported by any evidence, nor is it seriously urged; but it is said that inasmuch as appellant has acquired and now owns ten acres of the Micheal Charles land and as that is a larger acreage than one-seventh of the entire tract, which Sarah Dotson possibly agreed to convey, he can not complain of the failure of Sarah Dotson to make the conveyance. The objection to that contention is that appellant acquired the H. S. Carter land including the ten acres at a judicial sale paying full value for it, and his title to it is in no wise dependent upon or related to the agreement, if there was an agreement, on the part of

Sarah Dotson, to convey to him her interest in the Micheal Charles or Rachel Carter land.

Another contention of appellees is that the consideration for the deed of August 13, 1906, was the dismissal of the suit of Sarah Dotson on the claim for damages on account of the diversion of the creek. There is some evidence supporting this view, but it is unconvincing and there is no evidence of the consummation of such an agreement. It ought not, therefore, to have the effect of destroying the consideration stated in the deed.

The language of the deed of August 13, 1906, when considered in connection with the evidence, definitely shows that Sarah Dotson agreed to convey to appellant her interest in the Micheal Charles land or her interest in her deceased sister's part of it, in consideration of his executing and delivering the deed of August 13, 1906, and it was agreed that in the event of her failing so to do the interests conveyed to her should revert to the grantor.

The consideration inducing the execution and delivery of that deed was a condition subsequent. (Ricketts v. Louisville Ry. Co., 91 Ky. 221; Post v. Weil, etc., 5 L. R. A. 422.) It has completely failed and is now impossible of execution. In that view of the case we conclude that the judgment is erroneous and that the chancellor should have decreed a cancellation of the deed, and adjudicated the rights and claims of the parties to the John Dotson land according to their respective interests as herein indicated.

The judgment is reversed for proceedings consistent with this opinion.